## Campbell, et al. v. Commonwealth.

(Decided September 28, 1910).

### Appeal from Bell Circuit Court.

Homicide—Malicious Killing—Life Sentence.—In a prosecution against William Campbell and Ed. Elliott for the murder of Ulus Lockard, the evidence showed that while Lockard and some companions were out on Christmas Day shooting their pistols in the air, and in the ground, celebrating Christmas, as they passed a coal mining company's commissary car some persons began to shoot at them; one ball grazed the leg of Will Brackett, another grazed the cheek of Tom Brackett near the temple, and

another entered the back of Ulus Lockard, from which wound he died the next morning. On the trial the evidence showed that the defendant did the shooting and that one of them had enmity against Lockard. The defendants were convicted and given life terms in the penitentiary.      Held, that their sentence was authorized by the proof and the judgment of the lower court is affirmed.

J. H. HURST, J. L. REEDER, W. G. COLSON and O. V. RILEY, for appellants.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for appellee.

## OPINION OF THE COURT BY JUDGE NUNN—Affirming.

On the evening of Christmas day, 1907, Ulus Lockard, Tom Brackett, Will Brackett, Press Hendrickson and Will Hyatt procured some shotguns and loaded shells, walked up the railroad for about one and a half miles, shooting into the air and the ground, celebrating, as they claimed, Christmas. They started to return the same route, and when they had proceeded for about one half mile they reached the Black Raven Coal Mining Company's commissary, at which place there was a loaded car to their right on a side track. At the moment when they were passing this car some persons began to shoot at them; one ball grazed the leg of Will Brackett, another grazed the cheek of Tom Brackett near the temple and another entered the back of Ulus Lockard between the point of the shoulder blade and the spinal collmn, from which wound he died the next morning. It is the Commonwealth's theory that appellants, William Campbell and Ed. Elliott, committed the crime. They denied the charge and claimed that they were not at the car at any time during the evening, but were at a point about one mile away at the time Lockard was shot. Lockard was unconscious at the time he was found after the shooting and remained so, consequently he made no statement with reference thereto.

Tom Brackett, Will Brackett and Press Hendrickson were introduced as witnesses by the Commonwealth. Will Brackett and Press Hendrickson testified positively that they recognized appellants as the persons doing the shooting. Tom Brackett said he "took" it to be them. A witness by the name of Gholson testified that he had been to the coal tipple, a short distance from the place

of shooting, after a sack of coal to burn in his residence, and started to his home about the time the boys were passing this loaded car on the side track; that at the moment the last shot was fired he was passing the end of the car and saw that it was appellant Campbell who fired the shot; that there was somebody with Campbell, but he did not see him distinctly enough to recognize him. All four of these witnesses testified that they were enabled to recognize the parties by reason of the reflection of the electric lights from the office and commissary of the coal company and the flashes of appellants' weapons. The Commonwealth claims that the motive for the killing was appellant's hatred of Tom Brackett, and that it was their intention to kill him. The Commonwealth proved that Lockard and Brackett were near the same size and wore similar clothing on the night of the shooting, and appellants mistook Lockard for Brackett. Tom Brackett and appellants were brothers-in-law, Brackett and Campbell having married Elliott's sisters. The last trouble they had was on Sunday previous to the killing on Thursday, when they were playing poker. There was an accusation of cheating made and Brackett gave Campbell a severe cursing and they did not speak to each other from that time on. At four o'clock on the morning after the card game, appellants boarded a train and went to Middlesboro, where Elliott purchased a thirty-two automatic pistol and some cartridges for it. A witness by the name of Provin stated that he and appellant Campbell on the day, or the day before the killing, purchased some thirty-eight Winchester and some thirty-eight Colts cartridges. On the evening of the killing appellants went to the home of Provin. Campbell went into the house alone; Provin was at supper and asked Campbell to have a seat in a front room until he could finish his meal. Soon after Provin went into the front room, Campbell left and Provin discovered that his thirty-eight Colts pistol which was on the washstand, was gone. He stated that the pistol shot five times and was loaded all round. About three days afterwards the pistol was returned to Provin by the grandmother of Campbell's wife with only one load in it. The Commonwealth's witnesses say there were ten or twelve shots fired at the time Lockard was killed; that the last four shots made louder reports than the others. Tom Brackett testified that he saw the pistols as they were shooting them and they were blue steel, automatic revolvers. Two witnesses tes-

tified that soon after the shooting they went to the end of the car where the shooting was said to have occurred and with lighted matches found five or six automatic cartridges and two thirty-eight Winchesters. Another witness testified that he went the next morning to the other end of the car and found five or six thirty-two automatic cartridges, and some one else found two thirty-eight Smith & Wesson cartridges.

Appellants testified and each one's wife was introduced as a witness for the other and they also testified that the automatic pistols owned by appellants were in the house of Campbell on the evening of the shooting; that when Lockard was shot, the automatic pistol belonging to Campbell, was out of repair and would not fire but one time without taking something and pushing the empty cartridge out of it and that the revolver taken from Provin's house on the evening of the killing, was carried to Campbell's house for his wife's protection, as she did not understand how to use an automatic pistol. One or two other witnesses also testified that Campbell's revolver was out of repair. Appellants also introduced two witnesses, a father and son, who testified to facts, if true, which show that Gholson did not know who fired the shots at the time Lockard was killed, and several witnesses testified to the same effect with regard to Tom Brackett's knowledge as to what persons did the shooting. Appellants testified and introduced several persons to corroborate them, that they were near the depot, about one mile away, at the time the shooting occurred, but they all said that they did not know when the killing actually took place. The statements of some of the witnesses show that appellants could have reached the point of killing after they were seen at the depot before the shooting took place. The time fixed by some of the other witnesses at which they were at the depot, shows that they could have gone there after the killing.

The Commonwealth introduced an affidavit by appellants which they filed at a previous term for a continuance, in which they named four or five persons whom they claimed were with them at a certain place at the time of the killing, which place was different from the one they claim on the last trial to have been, and they also testified on the last trial that none of those persons were actually with them and that they did not see them on that evening. Our opinion is, from the evidence, that

appellants' alibi was not well established, and the jury had a right to disregard it.

Appellants ask a reversal because the facts fail to establish their guilt; they make no question as to the instructions. The court committed no error to their prejudice in the admission or rejection of testimony.

Our conclusion is that the jury was authorized to return the verdict of guilt fixing their punishment at confinement in the penitentiary for and during their natural lives, therefore, the judgment of the lower court is affirmed.